[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff from the assessment of damages in the amount of $108,000 paid by the defendant for the partial taking by eminent domain on February 25, 1991, of her property on the southerly side of Cottage Grove Road, known as Route 218, in the Town of Bloomfield, for the layout, alteration, extension, widening, change of grade and improvement of the highway.
Said premises are bounded: northerly by present Cottage Grove Road, Route 218, 559.24 feet, more or less; northerly, northeasterly and easterly by present Cottage Grove Road, Route 218, and Goodman Street, 44.33 feet, CT Page 1361 more or less; southerly by owner's remaining land, 451 feet, by a line designated "Taking Line," as shown on the map hereinafter referred to; westerly by owner's remaining land 20 feet, by said "Talking Line," as shown on said map; southerly again by owner's remaining land, 85 feet, more or less, by said "Talking Line," as shown on said map; and westerly again, by land of the State of Connecticut, 73 feet, more or less.
Said parcel contains 0.92 of an acre, more or less, together with all appurtenances, all of which more particularly appears on a map entitled: Town of Bloomfield, Map Showing Land Acquired From Diane B. Hoffman by The State of Connecticut, Reconstruction of Conn. Route 218, Scale 1" = 40', Sept. 1989, Robert Gubala, Transportation Chief Engineer — Bureau of Highways. (111-136-17)."
Said premises were taken with the following easements and rights on portions of said remaining land:
1. A full and perpetual easement to relocate brook channel, place riprap and remove, use or retain excavated material within an area of 0.031 of an acre, more or less, and located between and opposite approximate stations 47+14 and 48+00 right, Base Line Present Cottage Grove Road, Route 218, as shown on said map.
2. A full and perpetual easement to slope for the support of the highway within an area of 0.007 of an acre, more or less, and located between and opposite Stations 44+48 and 45+33 right, said "Base Line," as more particularly shown on said map.
3. A right to grade within an area located between and opposite approximate Stations 48+00 and 48+34 right, said "Base Line," as more particularly shown on said map.
4. A right to install sedimentation control system within a distance of 134 linear feet, more or less, and located between and opposite approximate Stations 47+98 and 48+32 right, Stations 44+50 and 45+33 right, said "Base Line," as more particularly shown on said map.
The aforesaid two rights shall terminate automatically upon completion of the work by the State.
The subject property contained approximately 6.65 acres, fronting 559.24 feet on Cottage Grove Road and 36.33 feet on the are of a curve connecting Cottage Grove Road and Goodman Street on the east. Its entire frontage to a depth containing about 0.92 of an acre has been taken by the defendant.
There are no buildings on the site which is located in an Industrial 1 zone. Cottage Grove Road, Route 218, is a major thoroughfare and connecting link between South Windsor on the east side of the Connecticut River, and I-91 west of the river, and Cigna Corporation, West Hartford and Simsbury to CT Page 1362 the west of the subject property. Some portions of the highway have been widened to four lanes. There is a partial center median strip. The highway is fully improved with utilities, storm sewers and curbing. The neighborhood is extensively developed commercially and industrially. Professional offices are located to the west; commercial and industrial enterprises to the north; and the Copaco retail complex to the east.
The center of the Cottage Grove Road frontage is about ten feet below street grade where Beman Brook enters the property. To the east and west of this low area, the land is at street grade. The site is reasonably level, except for the flood plain area of about 1.5 acres. Most of the site is covered with woods.
All of the appraisers agree, and the court so finds, that the highest and best use of the property is for commercial and retail development as permitted by the zoning regulations. Except for the reduction of acreage and depth of the site, the remaining land will not be adversely affected by the taking.
The defendant's appraiser used the market approach in his before and after taking valuations. The same three comparable sales of industrial properties were utilized for the before and after taking estimates of the subject property. Based upon these sales, he valued the property at $733,470 before the taking. Its value after the taking was estimated to be $627,670, resulting in a land loss of $105,800. In each instance he estimated the value of the property at $115,000 per acre, or $2.64 per square foot. He calculated the value of the easements for the relocation of the brook channel and for sloping to support the highway to be $2186, making the total damages due to the taking $107,986, rounded to $108,000, the amount paid.
The plaintiff's appraiser also relied upon the market or sales comparison approach in determining the value of the subject property. He did, however, use three different comparable sales. One of these was zoned Industrial 1, and the other two Professional Office. Based on these sales, he determined the square foot value before and after the taking to be $3.40, or $148,000 per acre. Using this measure of valuation, he estimated the before taking value to be $984,900 and the after taking value to be $848,600, resulting in damage of $136,300 to the plaintiff.
It is the duty of this court to make an independent determination of value and fair compensation for the property taken in the light of all circumstances, the evidence, the opinions of the expert witnesses, his knowledge of the elements that establish value, and a viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989).
In performance of this duty, I find that the before taking value of the subject property was $870,000 and its after taking value is $745,800, resulting in damages of $124,200. CT Page 1363
Judgment may enter for the plaintiff in the amount of $124,200, less $108,000 paid, or an excess of $16,200, with interest on such excess from the date of taking to the date of payment to the plaintiff, together with costs. There is no allowance for an appraisal fee, the plaintiff's appraiser having waived his fee for appraisal services in this matter.
William C. Bieluch State Trial Referee